Ms. West for the appellant, Mr. Smith for the appellant. Good morning. May it please the court, I'm Kira West and I represent Mr. Guadalupe Galaviz. The district court here abused its discretion and procedurally erred by giving a sentence that was greater than necessary. She erred in two ways, the district judge. She did not consider the most relevant section of Title 18-3553A, future dangerousness, and she created a disparity among similarly situated defendants. When you say she didn't consider it, what do you mean? She addressed it. I don't believe she did address future dangerousness, Your Honor, and that is what we've stated in our brief. I know that she did state in her opinion that she considered the nature and circumstances, but there's an actually in 3553A-2C, there's a section that says the court should consider to protect the public from further crimes of the defendant. This is the section that I don't believe the court addressed. Moreover, she did not address... So let me ask you, in the pro se brief, the argument is made that since he was likely to be deported upon completing his sentence, if he were released, he would not be a danger. Was that argument ever made to the district court? I don't believe the argument was made to the district court, Your Honor, and I know that the trial counsel did put that in the subsequent briefing that the court asked for, but he didn't go on and say, so he wouldn't be a danger to the community. Trial counsel only said that it was likely that he would be deported to Mexico. So I think that what you, Your Honor, have done has implied that that's the case, and that's true. But what we're saying here is not only did the court not consider that section of 3553, but that she didn't consider what's mandatory under Dillon, the note to 1B1.10, where it says specifically in subsection little 2, the public safety consideration. The court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment. And that's what the court is doing here in the 3582. It's not a resentencing. We're not looking at the whole sentence. We're not trying to renegotiate the plea. It's not anything like that. We're just trying to make an adjustment to the sentence. But Ms. West, the government points out, I mean, your argument is there was no violence, there were no guns, and the government points out where the district judge considered the harm to the community of the dissemination of these kinds of narcotics in these quantities. And the government, at least, sees that as addressing this question about whether this is the person, whether the kind of offense that this person was involved with, in fact, poses a danger to the community. You're correct, Your Honor. The prosecutor does suggest that the court, and the court did say that this was destructive to the community. But destructive to the community is not the same as dangerousness. It's a totally different concept. And that's why I think any district judge could say, okay, we consider the nature and circumstances of the offense and the history and characteristics of the defendant and be done with it. They do that when they undo the initial sentencing. The problem with the 3582 resentencing, if you could use that phrase, is that it requires the district judge to do more. And the government relies in part, I think, on the Jones case, which is a total outlier and can be distinguished from Mr. Galavis's case, not only Mr. Galavis's case, but every case in this district. So let me just be clear. The district court originally, in sentencing, made a lot of findings, correct? Yes, Your Honor. She incorporated those findings in what you're referring to as this resentencing. Yes, Your Honor. And the issue before her was whether or not she should adjust that to this reduction by the Sentencing Commission. Yes, Your Honor. And she asked for further briefing on that, didn't she? Yes, Your Honor. And yet nobody ever raised this particular point when the whole point of sentencing, isn't it, is to consider, among other things, this man's danger to the community. Not only should she have considered it, it's the most traditional briefing by the party. So obviously they didn't think it was very important, or they thought she had already considered it. That's what I'm trying to understand in your argument. I can't speak for the government only to say that they didn't raise that because there was no danger. Mr. Galavis, and this is unique for a drug case. No, I'm saying the defense never raised it. I understand, Your Honor. I understand. And I'm just getting to the facts. There were not dangerousness facts that the government could point to, but the defendant clearly should have said to the trial judge, there's a lack of what I said in my appellate brief. There's no guns. There's no force. There's no threats or intimidation. But, Ms. West, aren't we looking at this is not a sentencing or resentencing. This is only the subsequent proceeding that's on review here is only addressed to whether the sentence needs to be adjusted. That's correct. In view of intervening change in law. And is there anything about that intervening change that would affect the judge's underlying determination about dangerousness or not? I do believe so, Your Honor. How so? I think that 3582 requires the court in subsection 2, upon motion of the defendant, or the court may reduce the term of imprisonment. So it's discretionary. But with the advent of the Sentencing Commission's 1B1.10 admonition in the comment, it makes, it adds an extra layer, if you will, for the district court to consider the seriousness of the danger to any person or the community by letting this person have a lesser sentence. And I think it's important to note that Mr. Gallowby's got a sentence initially of 15 years. And his motion for reduction of sentence merely asked for the 12 months off, which would put him to 168 months from the original 180 months that he received. And 3582C requires the district court to consider factors in 3553A to the extent that they are applicable. So Judge Rogers is absolutely correct in saying the defense did not raise this very serious issue. But the trial judge is required under 3582 to consider this on her own. Actually, our case law gives the district court a little more leeway. Isn't that correct? The district court doesn't have to go down each subpart and sub-subpart of 3553A. Yes. The case law in the circuit, Your Honor, is that the judge, a district court, does not have to consider each and every factor under 3553A. But what the statute says that the court shall consider the factors set forth to the extent that they are applicable. And Mr. Gallowby's argument— Now, this is a dangerous man, says the district court. All right? The government agreed to this plea agreement with a sentence of what was 180. And, you know, that's understood. So the only issue now is, should she retroactively allow this adjustment? I don't believe because he got 180 months, it means that he's a dangerous individual. He was given 180 months based on the amount of cocaine and heroin that was involved in this case. And that's the distinction that we're trying to make in our brief. Actually, this was a plea that involved distribution. Yes, Your Honor. Not just possession. That's correct. And conspiracy. It's the two counts. That's correct. So you don't think there's any dangerousness lurking around in there? I didn't say that there's no dangerousness. But for this kind of case, I think it's unusual in a drug case of this magnitude that there was no threats or violence or guns. Which is why this court in Jones said that the court exercised its discretion correctly. You know, this is a very experienced trial judge. All right? I agree. Who's seen thousands of distribution cases. Very familiar with the harm caused by distribution of unlawful drugs in the District of Columbia. She accepted the plea agreement. All right? And the notion that she had her head in the sand as to dangerousness just boggles the mind. I agree with you. So if somebody thought that she should have reconsidered that, addressed it again, it seems to me it's just crying out for somebody to say to the judge, you have to do this all over again. You have to reconsider. And we're not asking for the court to, as I said, resentence or reconfigure the plea or anything of that nature. Yeah, but what rule are you asking for from this court? I'm saying that 3582, which is just for imposition of a sentence, requires the court to consider the factors in 3553 that are most applicable. And that's where we say that the district judge missed the boat here. And I agree with you, Judge Rogers. Judge Cogliar-Catelli is very fastidious, very meticulous about everything that she does. And I have great respect for the court. Our only argument is that in this kind of case, unlike Jones, which I think we have to distinguish it, the defendant there was part of the Rafel Edmonds conspiracy. And the court specifically mentioned, the district court in Jones and this court, affirmed that the court exercised his discretion properly because he did mention dangerousness. He did mention threats. Let me ask you, Ms. West, for purposes of the disparity calculus under 3553A-6, what's the appropriate baseline? What do we look to? And in particular, does that apply to co-defendants within a single case before a single judge? Does it apply across jurisdictions? Does it apply nationwide? How do we, in trying to advance the statutory objective of avoiding disparities among and between sentences, where do we look? How do we do that work? Yes, Your Honor. Certainly, you would look at similarly situated defendants in this case. And also, the statute is for- What if none of the other defendants have been sentenced yet? How do you take into account unwarranted disparity? If he's the first person in the whole group that gets sentenced- Then you would go to the-I would go to the Sentencing Commission's website and look at other 3582 motions with related drug cases. Statistically, they'll say in 70-I think the recent statistics are 75% have been given- Well, the mandatory minimum was one count was 10 years, and the mandatory minimum on the other count was five. That's correct. Which adds up to 180 months. Yes, Your Honor. All right, so how many cases- In your brief, you didn't mention- As I recall, you didn't mention other cases and other defendants that were subjected to those two mandatory minimums and their sentence compared to your clients or this defendant's. I did mention, Your Honor, a defendant by the name of Amaya Ortiz who had not been sentenced before- I know that, but I'm talking about you can't compare his sentence or the judge can't be expected to anticipate what's going- that individual's sentence at the time that the judge is sentencing this defendant. So the only comparison that was available would have been the mine run of cases that have gone before. But your brief doesn't tell us anything about that. You're correct. My brief does not. I know that there- Why isn't that the end of it? I'm sorry, sir? Why isn't that the end of it regarding disparity, unwarranted disparity? Because the district judge, although she had not yet sentenced Amaya Ortiz, she had taken his plea, and his plea involved 50 kilograms of cocaine. The factual basis- But no heroin. But no heroin. That's correct. And the defendant here had both cocaine and heroin. Right. So doesn't that dispose of the matter too? Because it's not an unwarranted disparity. There's mandatory minimums on those counts. We believe, and the record shows that there are other- especially Amaya Ortiz, they were subject to mandatory minimums. And we believe that it's a disparity because not only- and I mentioned this in my brief- did Mr. Galavis's PSR- The disparity may have been that the other defendant waiting sentence got too little. I mean, he wouldn't complain about it, but his sentence was too short. That's the disparity. Why don't we hear from the government? Yes. Good morning. Good morning. May it please the Court. Peter Smith on behalf of the United States. District Court did not abuse its discretion or otherwise err in failing to reduce the appellant's sentence under the 3582 motion. Appellant's principle argument this morning was that the district court didn't consider future dangerousness. And I guess I'd have several responses to that. First of all, in our view, it did consider that by explaining at length appellant's egregious offense conduct, including distributing 22 kilograms of heroin. In fact, in the government's factual proffer, the trial prosecutor explained that that was so much heroin that appellant was delivering to Washington, D.C. and New York City that it wouldn't fit in the vehicle they usually used to deliver- that the conspiracy had in the past used to deliver the drugs. And this is a huge amount of heroin. The district court judge recognized that, said that these were dangerous drugs that were a danger to the community and therefore did address future dangerousness. But in any event, this Court has made it clear in cases like Locke and similar cases that the Court doesn't have to specifically address each factor or- I'm sort of puzzled by that, Mr. Smith. I mean, if a factor, and I'm not saying this one is, but for example, disparity among defendants given Amaya Ortiz and the fact that these two are involved in the same operation, you might think that it would be particularly important to bear in mind how you're going to treat this reduction question across the group of defendants. I would think that if the facts present an issue, that would be a case in which you would expect the judge to look at it. In other words, that our precedent about you don't have to consider every single factor is more like, yeah, in cases in which it's not really in the mix. Do you understand that differently? I do. The judges pick and choose among 35-53. Like, I don't really like those factors. I'm not going to consider them. I think that the Court, you know, I think that what is required under the statute and cases like Locke recognize that what the statute requires is that the Court consider these things, not that the Court or that the Court has a reasoned basis for its decision. And considering it may be, as in a case like Locke, simply averting to the factors. The Court can say, in a sense, it's not that they have a reasoned basis. I'm sorry? You said it doesn't require that they have a reasoned basis? No, it does. So they would, but the claim of error is that the Court committed a procedural error. So the question before the Court isn't whether the District Court made the right decision or the decision that this Court would ultimately come to. The question is, did it make a procedural error? Did it either ignore the 35-53a factors altogether or did it do something else that was procedurally improper? And Locke stands for the proposition that so long as the District Court looks at the factors, i.e., says, I've heard the parties' arguments, I've looked at the statute, here's what I think, that's sufficient. So that would be sufficient here. And as to the other portion of ---- What is your position on what accounts for the difference between Amaya Ortiz's receiving this down tick and Mr. Gallaty's not? I think there's two responses, Your Honor. One is the great quantity of heroin that Appellant distributed. Appellant was charged with two offenses and convicted of those through his plea of guilty. And Amaya Ortiz only had one offense that involved cocaine, not heroin. Twenty-two kilos of heroin, as I mentioned before, is a huge amount. And the prosecutor and the District Court judge, in denying Appellant's motion for a due sentence, both referenced that amount and explained why that was important, why that offense conduct was unusually egregious. And I guess the other part of my answer to the Court's question would be that the Probation Office did not recommend a sentence reduction in Appellant's case, and it either did or it was agnostic with respect to either ---- It didn't recommend, but it was at least agnostic with respect to Amaya Ortiz. It didn't file a pre-sentence report opposing the co-defendant's case, and it did in this case. There was a new pre-sentence report that was prepared, and the conclusion of that report is that appendix page 334 was a recommendation against. And the Probation Office gave a number of reasons, but I take the principal reason to be the great quantity of heroin that Appellant distributed, which distinguishes him from Amaya Ortiz. So, I mean, I guess those have been my first-level answers to the Court's question. In the background, as the Court suggested a little bit earlier with the Appellant's counsel, is that it seems to me that what the guidelines are aimed at doing and what the statutory scheme is aimed at doing is normalizing sentences across the country, right, not necessarily within a case where you have these huge drug conspiracies that involve 20 or 30 defendants. At least the guidelines, the guideline range, the point of the guideline range is to look at drug conspiracies across the country, right, or at least across the jurisdiction. I don't take it that your position is that the sentencing disparity concerns don't apply within one operation, but that there may be relevant differences within an operation of the different roles, as you're pointing out here, the different types of drugs of which there's evidence, different people are dealing in, but the disparity analysis, it would seem, would also apply there. It might well be met. Sure, it's relevant, and I guess the overall question or issue that actually supports the government's position is that ultimately in sentencing, because the guidelines are nonbinding, is the Court has great discretion in sentencing, of course, and it can consider all kinds of things. But one would want to have a rationale. For example, if it had been otherwise that Galavis got the downward shift and Amaya Ortiz did not, that might raise concerns, no? I mean, certainly I would agree the Court can consider that, and that goes to that factor. I mean, we would want to have a base why that treatment was different. I think the district court would, but upon review, I guess I would, I don't think that it's this Court's task to analyze that rationale. I think that appellant's claim of procedural error is such that this Court would look to whether the Court looked at the factor at all, and if it did, and it gave a reasoned basis. Exactly. So we would want to perceive the rationale. We're not redoing it, but we would want to at least perceive the rationale. At least that it's addressed the factor or the factors in general. And Locke would say that the Court can address the factors in general. It doesn't have to go through each one, and it doesn't have to articulate its rationale in the way that either this Court or appellant would want. And what I mean by that is if the Court doesn't say, okay, now I'm going to address future dangerousness, if it, as it did here, spends 10 or 15 minutes during the sentencing hearing or spends two or three pages of its opinion discussing the nature of appellant's offense conduct, that does go to future dangerousness, but it doesn't have to use the language that appellant wants in articulating its rationale. So this Court's simply looking at whether the Court looked at the factors, which here it did. And, in fact, you have an 8- or 10-page written opinion from Judge Katelli explaining that rationale at length. Just circling back, didn't the probation office oppose the downward adjustment here because it thought that Galavis wasn't legally eligible for it? That because he thought that the judge went off the guidelines in a way that just took it out of the rubric? I don't think that, or at least I didn't read it that way. Again, it's at page 334 of the Joint Appendix. And when you get to the portion, there's a paragraph that says, you know, the recommendation, the heading is something like the recommendation, and the first sentence is, you know, the probation office doesn't recommend a reduction for appellant. And then I think that it talks about, or my recollection is it talks about the quantity ofó it talks about the quantity of drugs in his offense conduct. So I didn't take that to be the reason. If the Court doesn't have any other questions, we would urge the Court to affirm the judgment of the District Court. Thank you very much. Thank you. All right. Counsel for Appellant? Thank you, Your Honor. With regard to the Court asking questions about disparity, it's important that the appendix, the sealed appendix on page 331 in the Statement of Reasons that the Court initially did at the sentencing in February of 2014, for giving her reasons for her sentence, she did not check the box to protect the public from further crimes of the defendant, which I'm inferring from that that she did not consider, again, future dangerousness. Also, with regard, I've pointed out in my brief, with the disparity with the role in the offense, Mr. Amaya-Ortiz was also found as a leader or organizer, and our argument is that they were similarly situated even though, as Judge Randolph points out, the drugs were different. She didn't check the box. Do you think that's significant? I do, Your Honor, because the Statement of Reasons… If she had checked the box, I think it would have been earned, wouldn't it? This guy's going away for how many years? Fifteen. Fifteen years, right? Yes, sir. And then immediately upon his release from prison, he's going to be extradited to Mexico, right? Yes, Your Honor. Exported to Mexico. So if public means the public in the United States of America, he doesn't pose a risk to anybody because he's going to be serving 15 years and then get deported. So how could she possibly have checked that box? I think that there is a risk to the public because of the ease with which Hispanic Mexicans come into the United States over the border in Texas. Well, he might come back. Right. Sneak back. Finally, I'd ask the Court to look at the dissenting opinion in Piles that was written by Judge Williams versus the majority opinion in Jones, which was also written by Judge Williams. And it shows in Piles why Judge Williams dissented. There was no discussion about the dangerousness. And in Jones, how the district court did discuss it. You know, I think it's significant. That's what I've been trying to find. But on JA-221, the district court is specifically advised about deportation. All right? And saying that his client doesn't believe he's going to be deported. He was here legally, Your Honor. He was a legal resident alien. In a green card. Right. Yes, Your Honor. And so he says, the defendant has not asked me to ask the Court for a reduction under Smith. My only point is this whole issue was alive and nobody made these types of arguments. I don't disagree with the Court. Let me just ask you, Ms. West, before you sit down. The first round of briefing from August of 2016 to January 2017, that's been overtaken by the later briefing? Or is that still operational? It's actually still operable, I guess you'd say. My brief was just a supplement. That was done before I was appointed to the case, Your Honor. Finally, I love to give analogies because I do mostly trial work. And if I made this Court a pot of spaghetti and I put peppers, onions, tomatoes, and tomato sauce in it and said, here's your spaghetti, I'd be missing the noodles. And that's all our argument is. Of course, if you're talking about spaghetti, we get your point. Thank you, Your Honor. We'll take the case under advisement.
judges: Rogers, Pillard, Randolph